EDWARD A. SILBERSTEIN, Individually and as Trustee and Attorney in Fact, Respondent, v. WILLIAM MURDOCH, Appellant, Impleaded with JAMES L. CARLTON and Others, Defendants.

First Department, May 5, 1926.

Vendor and purchaser — action to compel delivery of contracts, moneys and documents alleged to have been delivered in escrow — appellant purchased mining lease and all personal property subject to inspection and title — documents were delivered to bank in sealed envelope indorsed by plaintiff, appellant and third person to effect that envelope was not to be delivered except in presence of each other — documents were not delivered in escrow — warranties made by plaintiff to appellant were untrue — said warranties were material and breach authorized appellant to refuse to complete — waiver not pleaded or shown — appellant is entitled to cancellation of documents delivered by him on ground of inability of plaintiff to perform.

A delivery in escrow of certain contracts, moneys and documents for the recovery of which this action was brought was not shown by the plaintiff, since it appears that the contracts, moneys and documents relating to the sale of a mining lease and all personal property on the leased ground were deposited in a sealed envelope and delivered to the defendant bank with instructions indorsed on the envelope, signed by the plaintiff, the appellant and another, to the effect that the envelope was to be delivered only to the undersigned when all were present, either in person or by duly constituted attorney in fact. Such delivery did not constitute an escrow, for there was no written instrument which by its terms imported a legal obligation, deposited with a stranger or third person, not a party to the agreement, to be kept by him until the performance of the condition or the happening of a certain event and then to be delivered over to take effect.

The appellant having agreed to purchase the lease in question and all personal property on the premises from a third person who had agreed to purchase the same from the plaintiff, was entitled to rely upon certain warranties and representations made by the plaintiff to the appellant, and 't appears that the warranty that the lease in question was for a specific term of ninety-nine years was untrue, since the lease was for the specific term of three years and as long there-

after as oil or gas was produced; that the warranty that the rent was a royalty of one-eighth of all oil produced was untrue, for the lease required in addition the payment of $100 per year, and the lessee was restricted as to the place of drilling; that the warranty that the bills of sale executed at the time, transferred and conveyed all the personal property which was on the premises when inspected by the appellant, with the exception of two drilling rigs, was untrue, since it appears that at the time of the appellant's inspection there were five drilling rigs of which one only was subject to conveyance; that the warranty that the plaintiff had full power and authority to execute an assignment of the lease was untrue, since it appears that the plaintiff represented thirty-two owners who had authorized him to transfer the property on certain conditions which were not in accordance with the conditions of the contracts between the parties to this transaction, and that at the time of the trial of this action the plaintiff had not then procured the necessary consents for the transfer.

Said representations and warranties were material and the breach thereof entitled the appellant to decline to complete the transfer.

Plaintiff's contention that there was a waiver on the part of the appellant cannot be sustained for the waiver was not pleaded by the plaintiff as an excuse for non-performance on his part of the conditions to be performed by him, and furthermore, a telegram sent by the appellant to the plaintiff objecting to the production of the well cannot be construed as a rejection of the proposition or as being a rejection upon a specific ground and, therefore, a waiver of all other objections except the one specified.

The appellant is entitled to the cancellation of the agreements and the surrender of the notes and moneys deposited by him, since it appears that the only agreement between the parties to the sale of the lease and personal property to which the appellant was also a party is the warranty agreement referred to and that according to the terms of that agreement the documents in question were to be canceled and destroyed and the moneys and notes returned to appellant if, after a reasonable time, the title to said oil lands and " all " personal property intended to be conveyed could not be and was not vested and transferred to the appellant within a reasonable time after the date of the contract, and since it appears that all the personal property was not and could not be transferred to the appellant; that the plaintiff was not able within a reasonable time to transfer the lease according to the terms of the contract, and that there was a breach of material representations and warranties.

APPEAL by the defendant, William Murdoch, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of September, 1924, upon the decision of the court rendered after a trial at the New York Special Term.

*Louis Salant* of counsel [*Joseph J. Cunningham* with him on the brief; *Stein & Salant,* attorneys], for the appellant.

*Victor E. Whitlock* of counsel [*Holm, Whitlock & Scarff,* attorneys], for the respondent.

FINCH, J. The action was brought to compel the delivery of certain contracts, moneys and documents alleged to have been deposited in escrow with the defendant Equitable Trust Company, and to compel the carrying out of a certain written agreement

between the parties. In brief, the complaint alleges that on the 30th day of September, 1920, the plaintiff, the defendant Sledge Oil Development Company and the defendant Carlton entered into an agreement, whereby there was sold by the plaintiff to Carlton a certain oil and gas lease, and there was sold by the defendant Sledge Oil Development Company to the defendant Carlton certain personal property used in connection with the operation and development of the lands covered by the oil and gas lease, all for the sum of $400,000; that provision was made in said agreement for the payment of $33,333.33 in cash, the balance to be evidenced by eleven notes in equal payments of $33,333.33, payable ninety days apart, to be delivered by Carlton to the plaintiff and Sledge Oil Development Company, to be secured by a chattel mortgage covering the aforesaid oil and gas lease and personal property. It is further alleged that in accordance with this agreement there were transferred to Carlton the said lease and property by appropriate instruments. It is further alleged that on the same day the defendant Carlton and the defendant Murdoch entered into an agreement whereby Carlton sold to Murdoch the same lease and personal property sold as aforesaid to Carlton, for which Murdoch agreed to pay to Carlton the sum of $600,000, paying $35,000 in cash, $15,000 in cash upon the exchange and delivery of instruments of transfer of title to said property and the balance by a series of eleven notes of $50,000 each, payable ninety days apart. It is further alleged that on the same day Carlton executed an assignment, in writing, of the said oil and gas lease to the defendant Murdoch and also gave to the latter a bill of sale of the personal property; that Murdoch executed a chattel mortgage covering the said lease and personal property to the defendant Carlton as collateral security for the notes forming part of the purchase price paid by Murdoch to Carlton. It is further alleged that in lieu of the execution by Carlton of the chattel mortgage to secure the notes given by Carlton as aforesaid, it was mutually agreed between plaintiff, the defendant Sledge Oil Development Company and the defendant Carlton that there should be substituted therefor an agreement between the said three parties declaratory of an ownership in the plaintiff and the Sledge Oil Development Company to the extent of $366,666.67, in the chattel mortgage executed by the defendant Murdoch to the defendant Carlton for $550,000 and declaring the ownership of the remaining share in said chattel mortgage, namely, $183,333.33, to be vested in the said Carlton, and that an agreement for said substitution was duly executed by the aforesaid parties thereto in writing. It is further alleged that all the aforesaid transactions were con-

ducted simultaneously, with full knowledge of all said transactions by each of the parties thereto, and that although the aforesaid transactions were in form nominally a sale by plaintiff and Sledge Oil Development Company to Carlton and, in turn by Carlton to Murdoch, Carlton was in fact acting as intermediary for Murdoch and it was the intention of all the parties that the sale was being made by the plaintiff and Sledge Oil Development Company direct to Murdoch. It is further alleged that at the request of Murdoch an agreement, in writing, was executed by the plaintiff, Carlton and Murdoch, whereby the plaintiff made certain warranties in reference to the property, reciting that said warranties were made for the purpose of inducing Murdoch to consummate the transactions therein referred to. Said latter agreement also provided that the $35,000 agreed to be paid by Murdoch on account of the purchase price of said property, together with all the other documents in connection with the transactions, should be deposited in escrow with the defendant Equitable Trust Company pending an investigation by the defendant Murdoch so as to assure himself that the property in question was conveyed to him in accordance with the terms of the contract. It was further provided by said agreement that all documents, notes and money should be delivered to the parties respectively entitled thereto, in pursuance of the terms thereof, in case there were conveyed to the said Murdoch the lease and personal property; in the event, on the other hand, that after a reasonable time the title to said property could not be and was not vested in said Murdoch, all the said documents should be destroyed and the money and notes returned to Murdoch. It is further alleged that all the papers executed as aforesaid in connection with the transactions, together with a check for $35,000 furnished by Murdoch, were delivered into the possession of the Equitable Trust Company; that the parties agreed that there should be substituted in place of the notes deposited by Murdoch a series of notes in similar denominations, the payments made by Murdoch to be apportioned between the sellers, so that Carlton should receive $200,000 and the balance be divided between the plaintiff and the Sledge Oil Development Company. It is further alleged that the defendant Murdoch entered into possession of the said oil lands and personal property and operated the same until on or about the 24th day of October, 1920; that thereafter and on or about October 30, 1920, the plaintiff served upon Murdoch and Carlton a notice, in writing, that the plaintiff would, on the 8th day of November, 1920, demand delivery of the papers deposited with the Equitable Trust Company and requested said Murdoch and Carlton to attend and join in said demand; that plaintiff and the defendant Carlton appeared, but that

the appellant Murdoch failed to appear, and the trust company refused to deliver the money or documents. It is further alleged that at the time of said demand more than a reasonable time had elapsed for Murdoch to complete an examination of the title, but that Murdoch had refused to complete performance of the aforesaid agreement to which he was a party and had abandoned possession of the property. The complaint further alleges due performance and willingness to perform on the part of the plaintiff and demands the delivery of the money and papers deposited as aforesaid with the Equitable Trust Company.

The answer of the defendant Murdoch denies any knowledge or information sufficient to form a belief as to the allegations with reference to the transactions between the plaintiff and Carlton; admits the execution of the documents alleged to have been executed and deposited with the trust company; admits that the plaintiff demanded he appear at the office of the Equitable Trust Company and demand delivery of the papers held by the trust company and that he refused to complete the performance of the alleged agreement and to consent to the delivery of the documents by the trust company. The answer puts in issue the other allegations of the complaint. As a defense and counterclaim, said answer of the defendant Murdoch sets up that on the 30th day of September, 1920, the defendant Murdoch entered into a contract with Carlton for the sale of the property mentioned in the complaint and executed certain documents in connection therewith; that this was done upon the inducement of certain warranties made by the plaintiff in reference to said property and that at the request of Murdoch all the documents were deposited with the Equitable Trust Company for the purpose of safekeeping and delivery should Murdoch consummate the transaction, in the event he found the title and property as warranted by the plaintiff; and that pursuant to such understanding Murdoch signed an agreement providing that the documents should be delivered to the Equitable Trust Company for delivery as aforesaid to the party respectively entitled thereto in the event of consummation, or for cancellation and the money and notes returned to Murdoch in the event that the property should not be transferred to him. It is further alleged that it was the intention of all the parties that none of said documents should be binding upon Murdoch unless the title of the property was as warranted, and the transaction was consummated. It is further alleged in said defense that there was a breach of certain of the warranties made by the plaintiff; that Carlton duly canceled all agreements between him and the defendant Murdoch, released the latter from all obligations thereunder and assigned to the

said Murdoch whatever right, title and interest Carlton might have in the check for $35,000 and the papers deposited with the Equitable Trust Company. Wherefore, the defendant Murdoch demanded judgment against the plaintiff and defendants Carlton and Equitable Trust Company dismissing the complaint, and that the Equitable Trust Company shall deliver up to Murdoch the check, notes and documents signed by him and in the possession of said trust company.

The Equitable Trust Company submitted itself to the decree of the court. The defendant Sledge Oil Development Company put in a notice of appearance but defaulted in pleading, was not represented at the trial and asked for no relief of any kind. The defendant Carlton was served, but defaulted in appearance and pleading.

From the record it appears, by the plaintiff's own testimony, that although the parties contemplated depositing the aforesaid money, notes and documents under an escrow agreement and attempted to draw up such an agreement at the time, the escrow agreement never was drawn up; that the deposit was made instead in an informal manner because the trust company would not sign the escrow agreement which had not first been approved by its counsel. The plaintiff's witness McCorkle testified that thereupon " Mr. Silberstein [the plaintiff] objected to any further delay, whereupon Mr. Murdoch suggested that we might just leave these papers in an envelope and indorse them without any agreement, leaving them simply with the Trust Company as depositors." It appears that this was done, the papers being left with the trust company in a sealed envelope, which envelope the trust company was to deliver only upon demand of all the parties. It was indorsed as follows:

" *October* 1, 1920.

" *To the Equitable Trust Company:*

" The sealed envelope herewith delivered to you is to be held by you and delivered only to the undersigned when all are present either in person or by duly constituted attorney-in-fact.

" (sgd)   EDWARD A. SILBERSTEIN,
" JAMES L. CARLTON,
" WILLIAM MURDOCH."

That this does not constitute an escrow is plain, since " An escrow is a written instrument, which by its terms imports a legal obligation, deposited by the grantor, promisor, or obligor, or his agent with a stranger or third person, who is not a party to the instrument, to be kept by the depositary until the performance of a condition or the happening of a certain event and then to be

delivered over to take effect." (21 C. J. 865; 10 R. C. L. 621; *Munger* v. *Perlman Rim Corp.*, 275 Fed. 21, 23.)

What took place speaks more of an unconsummated than of a consummated transaction. It is unnecessary, however, to determine this since there are clearer reasons leading to a reversal of the judgment appealed from and a dismissal of the complaint. It is obvious that the intention could not have been to close completely the transaction at the time the documents were deposited, leaving open only an opportunity to Murdoch to investigate the representation and warranties as to the property, since at that time the plaintiff concededly was not in a position to convey the property. Said property was owned by some thirty-two individuals, from whom the plaintiff had powers of attorney to assign. These powers, however, permitted an assignment only on certain specified conditions, which were not in accordance with the conditions of the contracts between the various parties to the transaction. It further appears that at the time when the plaintiff demanded that the parties appear at the office of the Equitable Trust Company for the purpose of receiving the papers, he had not obtained the consents necessary to a transfer of title to Murdoch. Since the plaintiff was not at that time himself in a position to perform the agreement on his part, it is obvious that he was not in a position to demand performance on the part of Murdoch, and hence was not in a position to declare the latter in default.

As was said by ALLEN, J., in *Nelson* v. *Plimpton Fire-Proof E. Co.* (55 N. Y. 480): " The contract between the parties to the action was mutual, and neither could recover against the other for a breach of its terms, or put the other in default, without a tender of performance, or at least proof of a readiness and willingness to perform." Also, in *Bigler* v. *Morgan* (77 N. Y. 312) it was said by RAPALLO, J.: " However positively a vendee may have refused to perform his contract, and however insufficient the reason assigned for his refusal, he cannot be subjected to damages without showing that he would have received what he contracted for, had he performed."

The words of Mr. Justice SCOTT, writing for this court in *Booth* v. *Milliken* (127 App. Div. 522; affd., 194 N. Y. 553), are peculiarly applicable to the facts in the case at bar. He said: " Defendant's refusal to go on with the purchase doubtless rendered it unnecessary for Doremus to make an actual tender, but it did not obviate the necessity to allege and prove his readiness to perform, or to allege and prove that by reason of some act of defendant he was unable to perform, which but for that act he would have been able to do. He has not brought himself, in any sense, within the rule. It is

conceded that he could not perform or tender performance because he had not title."

Moreover, it appears without contradiction, and was found as matters of fact by the trial court, that the following express warranties and representations made by the plaintiff to the defendant Murdoch were untrue: *First*, that the Sledge Oil lease was for a specific term of ninety-nine years; *second*, that the rent under the said lease was a royalty of one-eighth of all oil produced on the property as, when and if produced, and was not subject to any further substantial burden; *third*, that the bills of sale executed at the time transferred and conveyed to Murdoch all the personal property which was on the premises when inspected by Murdoch, with the exception of two drilling rigs; *fourth*, that the plaintiff had full power and authority to execute an assignment of lease.

With reference to the warranty that the Sledge Oil lease was for a term of ninety-nine years, it appears instead that the term provided by the said lease is as follows: " It is agreed that this lease shall remain in force for a term of three years from this date, and as long thereafter as oil or gas, or either of them, is produced therefrom by the party of the second part, his successors or assigns." This provision is far different from an absolute term for ninety-nine years, during which the lessee might prospect for oil and gas or abstain from so doing, and also suspend the production of gas and oil when it might be unprofitable to produce and market the same. Instead of a term of ninety-nine years, the plaintiff was tendered a lease for three years only, of which more than a year had already expired, with an indefinite period thereafter limited by the actual continued production of oil or gas. That the words " and as long thereafter as oil or gas, or either of them, is produced," are words of limitation and fix the term and duration of the lease, is well settled. In 27 Cyc. 722, it is said: " A lease to operate on lands for natural gas and oil for a specified term of years, and for as much longer a period as oil or gas is produced or found in paying quantities, expires at the end of the stipulated term, unless within that time oil or gas is produced in paying quantities, and at the expiration of the fixed period, the tenancy becomes one at will, not from year to year, and may be ended at any time by either party, provided oil is not afterward discovered in paying quantities." Also in *Eaton* v. *Allegany Gas Co.* (122 N. Y. 416), Chief Judge FOLLETT said: " Construing all of the provisions of the instrument together and keeping in mind the evident purpose of the parties, we think the term created by the lease was limited to the time during which oil should be found in the quantities mentioned,

and that the term, ' or as long as oil is found in paying quantities,' are words of limitation and fix the duration of the lease."

With reference to the warranty that the rent was a royalty of one-eighth of all oil produced, it appears that in addition the lessee was required to pay $100 a year in advance for the gas from each well where gas only is found, and also to furnish gas free of cost to heat and light one dwelling house on the premises. The lessee was also prohibited from drilling any well nearer than 200 feet to the house or barn on the premises and required to pay for damages caused by injury to growing crops on the land.

In so far as the warranty that the bills of sale transferred to Murdoch all the personal property is concerned, it appears that out of five drilling rigs which were on the property when inspected by Murdoch, one only was owned by the Sledge Oil Development Company, so that there were conveyed to the defendant Murdoch by the assignment two rigs less than was represented. The trial court held that compensation might be given to Murdoch, represented by the pecuniary value of these rigs, which the court fixed at $10,000. The plaintiff, however, needed these rigs in order to operate the property leased, and hence it is apparent that the representation was a material one, a breach of which would warrant the plaintiff in rescinding the contract.

In so far as concerns the warranty that plaintiff had full power and authority to execute the assignment of lease, it appears that the plaintiff was without authority to make such assignment in accordance with the terms of the agreement at the date of the alleged consummation of the sale, namely, September 30, 1920, but on the contrary, in many instances such authority was not obtained until as late as March, 1924, while the trial of the action was in progress.

It requires no argument to show the materiality of the aforesaid representations and that the breach thereof entitled the appellant to decline to complete the transaction. The respondent urges that there was a waiver of these objections by the sending by Murdoch of the following telegram to the plaintiff from Bowling Green, Ky., under date of October 24, 1920; " My return here confirms observation regarding settled production Sledge lease which has not equalled an average of twenty-five barrels daily. Being so far below production represented and not being in formal possession of property am requesting instructions what do you want done." By said telegram the appellant merely complained of the production being below representations, but said telegram did not purport to be a rejection of the proposition and cannot reasonably be construed as being a rejection upon a specific ground,

43

and hence within the rule that such a rejection is a waiver of all objections except the one specified. Moreover this telegram relied on as a waiver specifically mentioned that there had been no formal closing, thus saving all objections in connection with the closing in so far as this telegram is relied upon as a waiver. Moreover, no waiver was pleaded by the plaintiff as an excuse for non-performance on his part of the conditions by him to be performed.

It thus appears that the only agreement between the parties to the sale of the aforesaid lease and personal property to which Murdoch was also a party, is the so-called warranty agreement heretofore referred to. By the aforesaid warranty agreement it is provided that the documents shall be canceled and destroyed and the money and notes returned to Murdoch " if after reasonable time the said title to said oil lands and *all* personal property intended to be conveyed in accordance with said· documents cannot be and is not vested and transferred to the said William Murdoch within a reasonable time after the date hereof." (Italics not in original.)

It, therefore, affirmatively appears that all the personal property was not and could not be transferred to Murdoch and that the plaintiff was not able within a reasonable time to transfer the lease and that there was a breach of material representations and warranties. Under these circumstances Murdoch became entitled under the express provisions of the contract to the cancellation of the agreements and the surrender up of the notes and money deposited by him.

There are various other valid objections to the granting of the relief afforded by the judgment appealed from, but since the plaintiff, for the reasons above stated, has failed to show a cause of action against the appellant, it is unnecessary to consider such additional objections, except to say that in the opinion of this court the finding that the defendant Carlton was acting as the intermediary of the appellant is not sustained by the evidence. On the contrary, it seems clear that there was a sale to Carlton and a separate sale by the latter to the appellant, with a profit of $200,000 to Carlton.

It follows that the judgment should be reversed, with costs, and the complaint dismissed, and judgment directed for the appellant on his counterclaim, with costs.

CLARKE, P. J., MERRELL and MARTIN, JJ., concur.

Judgment reversed, with costs,· complaint dismissed and judgment directed for the appellant on his counterclaim, with costs. Settle order on notice.