John P. Cohalan, Jr., J.
This action was tried before the court without a jury.
Plaintiff bank sued defendant, as maker, for defaulting on a 90-day promissory note for $3,000, dated March 13,1964. In his *887 answer, defendant, by failing to deny, has admitted the debt. He does deny, however, that he owes the additional sum of $450, sued for, which represents an attorney’s fee of 15%; and claims that it is unconscionable and void as against public policy.
The note, as signed by defendant, reads in pertinent part that ‘ ‘ Each maker * * * agrees that if any attorney is used to enforce or collect this note * * * for non-payment at maturity * * * an attorney’s fee of 15% of principal and interest shall be added thereto
Section 108 .(subd. 5, par. [e], cl. [iii]) of the Banking Law, which permits .in certain instances a recovery of ‘1 actual expenditures, including reasonable attorneys’ fees for necessary court process ” is a legislative indication that the inclusion of such an item in a note is not contra bonos mores.
In view of minimum fee schedules prepared and suggested by bar associations which indicate that collection fees average higher than the 15% here claimed, the court finds that such a percentage is not unconscionable. (See Franklin Nat. Bank v. Capobianco, 51 Misc 2d 30.)
Thus, as to the action on .the note for $3,000, judgment may enter for $3,450, plus interest on $3,000 from March 13,1964.
In his answer, defendant interposed a counterclaim, the sum and substance of which is that plaintiff was acting as an escrow agent for him in a real estate transaction, and that it breached the agreement to his damage in the sum of $20,000.
As to the counterclaim, the bank in its reply affirmatively contended (1) that it was not and never was an escrow agent in the transaction; (2) as a consequence Grassi was estopped from asserting the existence of an escrow agreement; (3) the Statute of Frauds constituted a complete defense; and (4) the bank followed Grassi’s instructions to the letter.
The events leading up to .the claimed “ escrow ” reveal that on Nevember 6,1963, Grassi as lessee and one, Padula as lessor, entered in a lease of land at Water Mill, in the Town of Southampton, in Suffolk County. After a minimum period of 10 years and a maximum of 20, defendant could exercise an option to purchase the property, meanwhile paying an annual reserved rental plus all carrying charges. Provision was made in the lease (without obtaining formal permission from the bank) that it would hold certain instruments and perform certain functions in the furtherance of the transaction between Grassi and Padula. The attorneys for Grassi thereupon wrote a letter to the bank, which was hand-delivered by Padula, and enclosed the following items: (1) a conformed copy of the lease; (2) a bargain and sale deed in recordable form running from Padula to Grassi; and *888 (3) two checks totaling $2,000, indorsed by Grassi to the bank to be used in opening an account for the former. Signature cards accompanied the checks. Webb, the officer of the bank to whom the letter was addressed, inked out the clause ‘ ‘ and agree to act as escrowee ”. He then signed the enclosed copy of the letter and returned it to the defendant’s then attorneys. His explanation, given at the trial, was that he could not agree to the proposed escrow arrangement on his own responsibility but would refer the matter to the bank’s attorneys, which he thereafter did. As far as the record shows, no opinion one way or the other was rendered to the bank officer and no further writing with respect to the escrow ever eventuated.
It is obvious that no one, against his will, can be forced to act as an escrow agent (Silberstein v. Murdoch, 216 App. Div. 665).
For a period of about seven months Grassi made periodic deposits and withdrawals, some of the latter being for personal reasons in no way connected with the upkeep of the real property, although the account existed to provide for those items alone.
Defendant took full advantage of a 20-day grace period in January, 1964 to pay the quarterly rental to Padula and just did get in under the wire. When April of that year rolled around there was a balance in his account of only $57.26, a figure static on the books of .the bank from March 17 to April 20.
Events which occurred in April gave rise to .the instant litigation.
According to Webb, Padula stopped in at the bank on two or three occasions in the early part of the month to ask for his quarterly payment of $1,000. As already indicated, no money was available.
Webb testified that on the 17th '(Friday) he received a telephone call from Grassi. He was told that he would receive a cashier’s check drawn on a bank in New York City for $10,000, by special delivery, on Monday, the 20th. Out of this check he was to apply so much as was needed to honor a check drawn to the Internal Revenue Service (IRS). This check later cleared plaintiff bank for $8,377.44 on the 28th of the month.
Webb claims that he informed Grassi of Padula’s visits and was told that he, Grassi, would take care of Padula directly. This information Webb relayed .to Padula after banking hours on the 20th, at which time Padula demanded and Webb surrendered the deed and lease which had been left with him in November of 1963.
Grassi, admitting that his memory of events now four years old was a bit hazy, testified that he apprised Webb of the approxi *889 mate amount due IBS and instructed him to pay Padula from the remainder of the $10,000 check.
In his argument on the law, defendant makes much of the fact that a cashier’s check is an obligation of the issuing bank (citing Matter of Bank of United States, 243 App. Div. 287) and that once issued payment cannot be stopped (Bobrick v. Second Nat. Bank, 175 App. Div. 550, affd. 224 N. Y. 637).
Without taking issue with defendant’s exposition of the law, plaintiff points out that its arrangement with Grassi, as with all its depositors, was that “ All items are credited subject to final collection and receipt of proceeds in cash or by unconditional credit to and accepted by The Tinker National Bank”. This legend appeared in haec verba on all deposit slips of the Bank.
The Negotiable Instruments Law (then in effect), at article 19-A (§ 350-a, Bank as agent for collection), stated in pertinent part that: u Except as otherwise provided by agreement * * # where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection
No claim is made that there was any specific agreement to the contrary.
Of passing interest is the circumstance that in the Bank of United States case (supra) the claimant O’Neill was left with a cashier’s check and a creditor-debtor relationship with the insolvent banking institution.
The Statute of Frauds (General Obligations Law, § 5-701, Agreements required to be in writing) tells us that: ‘ ‘ Every agreement * * * is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement * * * 1. By its terms is not to be performed within one year from the making thereof ”.
It can scarcely be claimed that the bank’s action constituted such “ part performance ” as to take it out of the protection of the statute.
On the testimony and exhibits received by the court as trier of the facts and applying the rule that as to the counterclaim, defendant must prove his case by a fair preponderance of the credible evidence, the court finds on the fact issue that Grassi has not met that test.
As to the issues of law submitted, on the two questions of escrow and Statute of Frauds, the plaintiff must prevail.
The counterclaim is dismissed. Judgment may enter for the plaintiff as indicated above.