OPINION OF THE COURT
Joseph C. Calabrese, J.
FINDINGS OF FACT
On August 9, 1988, the plaintiff here Thomas Vellaringattu and his wife (not a party here) entered into a written contract for the purchase of real estate located at 1935 Commonwealth Avenue, Merrick, New York. Prior to entering into the contract there was an engineering report, part of which indicated problems with the roof. The defendant here George R. Caso *520 was attorney for the sellers, Edmund K. Box and Patricia E. Box, who moved to North Carolina shortly after the closing. The contract provided in the rider under paragraph 4 that: "The seller further represents that * * * the roof shall be free of leaks on date of title closing. Said representation of the seller shall not be deemed, however, to survive delivery of the deed or possession of the premises, whichever is later.”
Paragraph 5 of the contract rider provided: "5. Premises shall be delivered vacant and broom clean on title, except that if Seller remains in possession of the premises following the closing of title herein, he shall deposit the sum of $1,250.00 with his Attorney, in escrow, to guarantee his removal therefrom within five (5) days after title closes, and shall obligate himself to pay to the Purchaser the sum of $100.00 for each and every day he remains in possession of the premises beyond such guaranteed date of removal. All adjustments, including interest on purchaser’s mortgage, shall be made as of delivery of possession. This clause shall survive the delivery of the deed herein, and shall in no event be construed as creating a relationship of landlord and tenant.”
Paragraph 9 of the contract rider provided as follows: "9. The contract downpayment shall be held in escrow by george r. caso, esq., as Sellers agent until closing of title or prior termination of this contract pursuant to the terms hereof.” Paragraph 11 of the rider of the contract provides as follows: "If litigation is commenced by any party regarding any money held in escrow by Seller’s agent, the parties agree that the Seller’s agent shall not be made a party to any lawsuit regarding release of said escrow. Any litigation shall be solely between the parties, and Seller’s agent agrees not to disburse any escrow which is subject to dispute until provided for in a Court order, judgment or stipulation between the parties.”
On November 10, 1988, a closing took place. No discussion took place at the closing involving the roof. The plaintiff made an inspection of the premises prior to closing. At the closing no discussions took place with respect to the holding of an escrow, no escrow or survival agreement was entered into and the clauses of the contract were not initialed or noted in any way as if to survive closing. It was apparent, however, that the parties and attorney were aware that actual possession would change hands on November 13, 1988. Adjustments were made to that date.
On November 13, 1988, the plaintiff and his wife moved into *521 the house and did not reinspect when the sellers left. They did not see each other at all on that day. The plaintiff observed what appeared to be stains from a roof leak and called his lawyer, Jay A. Marshall, Esq., on November 14, 1988. Mr. Marshall spoke with the defendant here late in the day on November 14, and asked him to not release the escrow due to the problem with the roof. The defendant informed Mr. Marshall that no escrow was held.
The plaintiff here sues the defendant based on a theory of breach of the escrow agreement and his obligations as escrow agent. The defendant contends that no escrow agreement was entered into at closing that would have made the escrow chargeable with the guarantees on the roof provided for in the contract and that, therefore, the escrow, even if held, was only to ensure departure by the sellers on November 13, 1988, which did take place. In addition, he contends the requisites for an escrow agreement were not present.
CONCLUSIONS OF LAW
In an action based upon an alleged breach of an escrow agreement, the one who claims that a particular person was acting as an escrow agent for him in a transaction must prove the existence of an escrow agreement by a fair preponderance of the credible evidence. (Tinker Natl. Bank v Grassi, 57 Misc 2d 886 [1968].)
An "escrow” is defined as a written instrument which by its term imparts a legal obligation and which is deposited by the grantor, promisor, or obligor, or agent thereof, with a stranger or third party, to be kept by the depositor, until the performance of a condition or the happening of a certain event, and then to be delivered over to the grantee, promisee or obligee. (Jackson ex dem. Gratz v Catlin, 2 Johns 248 [1807], affd 8 Johns 520; Silberstein v Murdoch, 216 App Div 665 [1926].)
There are four elements that constitute the creation of an escrow agreement: (1) an agreement as to the subject matter and delivery of the deposit or instrument; (2) a third-party depository; (3) delivery of the funds or instrument to the third-party conditioned upon the performance of some act or the happening of some event and (4) relinquishment by the grantor or depositor. (Press v Marvalan Indus., 422 F Supp 346 [SD NY 1976].)
Generally, all prior negotiations or agreements are merged in the deed and such negotiations or agreement are not *522 admissible to vary the terms of the written instrument, there being a conclusive presumption that the parties intended to integrate in the deed every agreement relating to the nature or extent of the property conveyed. (Erit Realty Corp. v Sea Gate Assn., 249 NY 52 [1928], rearg denied 249 NY 417.) However, it has long been the rule that this merger takes place only to the extent that the deed is a performance thereof, and that no merger will apply where it is clearly contrary to the intention of the parties. (Abbott v Curran, 98 NY 665 [1885]; Ferro v Miller, 41 Misc 2d 331 [1963].)
The contract of sale in this case is a contract between the sellers and the buyers (one of which sellers is plaintiff here). The defendant here, attorney for the seller, is not a party to that contract, even though he is referred to therein. The result in this regard would be different if the defendant were a signatory to the original contract and a request was made at closing to hold back part of the down payment. The reference, in any case, to the defendant in the contract is only, pursuant to paragraph 9 of the rider, for purposes of holding the down payment in escrow until closing "or prior termination of this contract.” (Emphasis added.)
Paragraph 9 of the contract shows an intention by the parties not to extend the down payment escrow beyond closing unless otherwise indicated. This is significant because the plaintiff is relying on a theory that the escrow to be held at closing was part of the down payment originally held which the plaintiff claims needed no further agreement or identification than the original contract of sale. This is not true in law, as can be seen above from the elements of an escrow agreement, nor is it even true according to the tenor of the underlying contract of sale. What the plaintiff is doing is confusing the fact that because the defendant held the down-payment payment in escrow, no further agreement would be necessary to form an escrow agreement at closing as to the guarantees in the contract contained in paragraph 4. In effect, by not entering into a "possession”, "escrow” or "survival” agreement at closing no delivery was made of the subject of the escrow nor was there even an acceptance of such an arrangement by the parties, most importantly, the escrow agent here. Even an initial of paragraphs 4 and 5, by all sides and each attorney would have indicated such arrangement, acceptance and delivery. Absent same, there was no escrow agreement.
Even if we were to assume that paragraph 5 of the rider, *523 merely by its tenor created such an escrow, the plaintiff is left with another insurmountable problem; the guarantee of "Roof free from leaks” is contained in paragraph 4 of the rider. Assuming paragraph 5 of the contract created an escrow that survived closing, binding the defendant here, that escrow would pertain only to the guarantee of possession on November 13 and to insure the $100-a-day penalty past that date, since adjustments had already been made to that date. Since possession was delivered on November 13, no payment would have been due the plaintiff out of escrow. The plaintiff wants the court to accept that position without any further written indication that the escrow was extended to cover the condition of the premises contained in paragraph 4, but no escrow is indicated in paragraph 4, nor is such an extension included or implied in paragraph 5. This is another reason why, in order to hold defendant liable here, it would be necessary to show a "survival”, "escrow” or "possession” agreement extending the escrow to cover the guarantees and meeting all the other prerequisites of an escrow agreement. Even a general statement in such an escrow agreement that the premises are to be delivered "in accordance with the terms of the contract” would suffice to extend the guarantees under the cover of the escrow. Whether a mere initialing of the clauses by all parties, including the escrow agent, would indicate that the escrow covers the guarantees, is a question that can only be decided on a case-by-case basis. Surely, the safer course is a separate escrow agreement. This also gives the parties the opportunity to delineate the conditions and timing of release of the escrow.
Therefore, it is the opinion, decision and order of this court that the plaintiff’s claim here be denied and dismissed as against this defendant. It would be less than fair of me, however, not to point out and find that the guarantee clause (para 4) of the contract did not merge in the deed, but survived the closing, thereby giving the plaintiff recourse against the seller.